IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH CASTELLANO,<br><br>               Plaintiff,<br><br>v.<br><br>L. LEWIS, SWARTZ K-9,<br><br>               Defendants. | **REPORT AND RECOMMENDATION**<br><br>Case No. 2:14-cv-00619-RJS-EJF<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Evelyn J. Furse |

On August 29, 2014, Plaintiff Joseph Castellano filed a 42 U.S.C. § 1983 action against Defendant Officer Levi Lewis. (ECF No. 3.) Mr. Castellano alleges that Officer Lewis violated his Fourth Amendment rights during a traffic stop and subsequent investigatory detention, canine sniff, and search of Mr. Castellano's car. (Compl. 2–3, ECF No. 3.) Officer Lewis moved the Court for summary judgment on the claims against him, asserting qualified immunity. (ECF No. 20.)

Mr. Castellano failed to put forth evidence that would allow a reasonable jury to conclude that Officer Lewis took actions that violated Mr. Castellano's constitutional rights through the traffic stop and investigatory detention. Thus, the undersigned[1] RECOMMENDS the District Court grant Officer Lewis's Motion for Summary Judgment on the grounds that qualified immunity protects Officer Lewis from suit.[2]

---

[1] On September 10, 2014, Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). (ECF No. 7.)

[2] Pursuant to DUCiv R 7-1(f), the undersigned finds oral argument unnecessary and makes its recommendation on the basis of the record and the written memoranda of the parties.

### A. Uncontested Facts

Mr. Castellano's Opposition fails to dispute or respond to the facts laid out in Officer Lewis's Motion for Summary Judgment, (*see* Pl.'s Opp'n, ECF No. 27), as required by DUCiv R 56-1(c)(2); therefore, the undersigned deems each of the facts admitted. *See* DUCiv R 56-1(c) ("[A]ll material facts of record . . . that are set forth with particularity in the movant's statement of material facts will be deemed admitted unless specifically controverted by the statement of the opposing party identifying and citing to material facts of record . . . ."); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

On July 31, 2014, at approximately 10:30 a.m., Officer Lewis observed Mr. Castellano driving southbound on 1200 East in Lehi City. (Def.'s Summ. J. Mot. ("Mot."), "Statement of Elements and Undisputed Facts" (hereinafter "Facts"), ¶¶ 1–2, ECF No. 20.) As Mr. Castellano approached a Motel 6 on 1200 East, he appeared to "slow[] way down," as if to turn into the parking lot; however, Mr. Castellano did not turn into the parking lot and instead continued driving south on 1200 East, which Officer Lewis perceived as Mr. Castellano's reaction to seeing a fire truck and ambulance parked in front of the Motel 6. (Facts ¶¶ 8, 10–12 (quoting Declaration of Levi Lewis ("Lewis Decl.") ¶ 6, Ex. A), ECF No. 20.) Mr. Castellano then circled the block and approached the Motel 6 from the other direction, where he again "slowed way down" in front of the Motel 6 but did not turn into the parking lot, and Officer Lewis perceived that decision as Mr. Castellano's reaction to seeing Officer Lewis's parked patrol car nearby. (Facts ¶¶ 14–16 (quoting Lewis Decl. ¶ 12, Ex. A), ECF No. 20.) As Mr. Castellano continued north, he drove past Officer Lewis's patrol car and pulled into a nearby gas station. (Facts ¶ 17,

ECF No. 20.)  Mr. Castellano did not get gas and did not go into the convenience store; he remained in his car at the gas station for approximately three to five minutes before pulling out, heading towards American Fork.  (Facts ¶¶ 18–20, ECF No. 20.)

Based on these observations and his experience, Officer Lewis considered Mr. Castellano's driving pattern suspicious and evasive.  (Facts ¶ 21, ECF No. 20.)  Officer Lewis explained that officers see similar driving patterns "all the time," where someone intends to pull into a certain location but does not do so once they see law enforcement.  (*Id.* (quoting Lewis Decl. ¶ 20, Ex. A), ECF No. 20.)  Moreover, Officer Lewis knew the Motel 6 constituted an "area for the sale, use, and purchase of narcotics."  (Facts ¶ 9 (quoting Lewis Decl. ¶ 5, Ex. A), ECF No. 20.)

While observing Mr. Castellano's driving, Officer Lewis noticed that Mr. Castellano had broken brake lights.  (Facts ¶ 3, ECF No. 20.)  At approximately 10:45 a.m., as Mr. Castellano drove away from the gas station, Officer Lewis pulled Mr. Castellano over for failing to have functional brake lights.  (Facts ¶¶ 4, 22–23, ECF No. 20.)  As Officer Lewis ran Mr. Castellano's license and registration, Officer Lewis discovered that the American Fork SWAT team had executed a drug-related search warrant against Mr. Castellano approximately one month earlier, during which the officers confiscated drugs and drug paraphernalia from Mr. Castellano's home and after which Mr. Castellano admitted to using methamphetamine.  (Facts ¶¶ 25–28, ECF No. 20.)

In light of Mr. Castellano's criminal history, evasive driving pattern, and presence near a known drug-crime location, Officer Lewis decided to call another officer on duty, Officer Smith, to bring his narcotics dog to Mr. Castellano's car.  (Facts ¶ 29, ECF No. 20.)  While waiting in his patrol car for Officer Smith to arrive, Officer Lewis prepared the citation for Mr. Castellano's

defective break lights.  (Facts ¶¶ 34–35, ECF No. 20.)  Approximately fourteen minutes elapsed between Officer Lewis' first call to Officer Smith and Officer Smith's arrival with his narcotics dog, at approximately 11:02 a.m.  (Facts ¶ 34, ECF No. 20.)  Officer Lewis asked Mr. Castellano to exit the car, and Officer Smith had his dog do a sniff of the car's exterior while Officer Lewis explained the citation to Mr. Castellano.  (Facts ¶¶ 38–39, ECF No. 20.)  After the dog alerted to the driver's door, Officer Smith proceeded to search the interior of the car.  (Facts ¶¶ 40–42, ECF No. 20.)  When the search did not reveal any illegal drugs or drug paraphernalia, Officer Lewis told Mr. Castellano he could leave.  (Facts ¶¶ 36, 44, ECF No. 20.)  Mr. Castellano returned to his car and drove away at approximately 11:11 a.m.  (Facts ¶ 37, ECF No. 20.)  The entire encounter lasted approximately twenty-six minutes.  (Facts ¶¶ 22–23, 37, ECF No. 20.)

Mr. Castellano subsequently filed this suit, alleging that Officer Lewis violated his Fourth Amendment rights by conducting the investigatory detention and canine search of Mr. Castellano's car.  (ECF No. 3.)  On April 7, 2015, Officer Lewis' moved the Court for summary judgment on Mr. Castellano's claims.  (ECF No. 20.)

## B.  ANALYSIS

Officer Lewis moved for summary judgment because he asserts he has qualified immunity for his alleged actions.

### A.     Motion for Summary Judgment

A court may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Because Mr. Castellano did not dispute or respond to the facts set forth in Officer Lewis's Motion, no dispute of fact exists.  *See* DUCiv R 56-1(c).  Nonetheless, the Court must "view the evidence and make all reasonable inferences in the light most favorable

to the nonmoving party." N. *Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).

      **B.**      **Qualified Immunity**

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity provides broad protection, shielding "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When a defendant asserts qualified immunity, as Officer Lewis has, (Mot. 10, ECF No. 20), the burden shifts to the plaintiff "to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Where the defendant's alleged actions, even if proven, did not violate a constitutional right, the court need go no further in its qualified immunity analysis and may grant summary judgment. See *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

Where a § 1983 claim challenges an investigative detention under the Fourth Amendment, "the officer 'is entitled to qualified immunity if a reasonable officer could have believed that [reasonable suspicion] existed to . . . detain the plaintiff'—i.e., if the officer had 'arguable reasonable suspicion.'" *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008) (alterations in original) (quoting *Cortez*, 478 F.3d at 1120, 1123).

      **1.**      **Investigatory Detention**

As an initial matter, Mr. Castellano does not dispute the constitutionality of the initial stop based on the defective brake lights or the search of his car based on the drug dog's alert. (Pl.'s Opp'n 2–3, ECF No. 27.) Mr. Castellano only disputes whether Officer Lewis had the

"requisite level of reasonable suspicion" to prolong the length of Mr. Castellano's detention to bring a drug dog to the scene. (*Id.* at 2.) Given the uncontested facts, the undersigned finds Officer Lewis had arguable reasonable suspicion to prolong the stop to allow for a canine search of Mr. Castellano's car as a matter of law.

"Generally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Cervine*, 347 F.3d 865, 870–71 (10th Cir. 2003) (quoting *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999)).  Although an officer conducting a traffic stop ordinarily "may not do more than ask to see a driver's license and registration and insurance documents, run a computer check on the car and driver, inquire about the driver's travel plans, and write out a citation . . . the officer may delay the driver for further investigation if the officer has an objectively reasonable, articulable suspicion of some illegal activity beyond the traffic violation." *United States v. Vazquez*, 555 F.3d 923, 928-29 (10th Cir. 2009).

The Court looks to the totality of the circumstances in determining whether an officer had objectively reasonable articulable suspicion of other criminal activity during a traffic stop. *United States v. White*, 584 F.3d 935, 950 (10th Cir. 2009).  "Reasonable suspicion is 'something more than an inchoate and unparticularized suspicion or hunch,' but 'is considerably less than proof by a preponderance of the evidence or [proof] required for probable cause.'" *United States v. De La Cruz*, 703 F.3d 1193, 1196 (10th Cir. 2013) (quoting *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011)).  "For reasonable suspicion to exist, an officer 'need not rule out the possibility of innocent conduct;' he or she simply must possess 'some minimal level of objective justification' . . . ." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)).

Here, the admitted facts show: Officer Lewis observed Mr. Castellano driving in an evasive and suspicious pattern, near a location known for drug-related criminal activity. Further, the uncontested facts show during a valid traffic stop based on Mr. Castellano's defective break lights, Officer Lewis discovered American Fork police officers had a search warrant for narcotics executed on Mr. Castellano's home during the prior month, which had resulted in Mr. Castellano admitting to using methamphetamine. (Facts ¶¶ 7–28, ECF No. 20.) In criminal cases, courts have held each of these factors contributes to reasonable suspicion of criminal activity. *See United States v. Briggs*, 720 F.3d 1281, 1286–87 (10th Cir. 2013) (noting a sudden change of course upon seeing law enforcement as relevant); *United States v. Clarkson*, 551 F.3d 1196, 1201-02 (10th Cir. 2009) (finding presence in an area known for drug activity relevant); *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010) (noting criminal history "contributes powerfully" to reasonable suspicion (quoting *White*, 584 F.3d at 951)).

Mr. Castellano contends that because he did not turn into the Motel 6, Officer Lewis should have drawn the opposite inference – "that Mr. Castellano had in fact *not* purchased drugs." (Pl.'s Opp'n 2, ECF No. 27.) Taking away Officer Lewis' suspicions about a drug purchase, Mr. Castellano claims, leaves only a month old search warrant that will not support reasonable suspicion by itself. (*Id.*) However, the case law does not support Mr. Castellano's argument. As an initial matter, the law does not require Officer Lewis to adopt an innocent interpretation of Mr. Castellano's driving pattern where the facts as a whole suggested suspicious and evasive behavior. *See United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct."). In *Briggs*, the Tenth Circuit held that the defendant's evasive behavior – his change in direction upon seeing law enforcement, increase in pace, and repeated glances over his

7

shoulder – reasonably heightened the officers' suspicion. 720 F.3d at 1287. The Tenth Circuit also found that the totality of the circumstances supported an investigatory stop where the defendant was driving in high crime neighborhood, approached a drug and gang flophouse, and fled upon spotting police officers, displaying a "deer in the headlights" reaction. *United States v. Jensen*, 41 Fed. App'x 346, 349–50 (10th Cir. 2002).

Here, Mr. Castellano's evasive driving pattern and presence in an area of drug-crime activity formed an objective basis for Officer Lewis's heightened suspicion and further investigatory detention. Officer Lewis saw Mr. Castellano twice slow down while approaching the Motel 6 and decide not to enter, both times in apparent reaction to law enforcement presence. (Facts ¶¶ 10–12, 14–16, ECF No. 20.) Officer Lewis then observed Mr. Castellano pull into a gas station, wait for a few minutes, and leave without getting gas or exiting his car. (Facts ¶¶ 17–20, ECF No. 20.) Officer Lewis knew the Motel 6 had a reputation for drug-related criminal activity. (Facts ¶ 9, ECF No. 20.) Under these circumstances, Officer Lewis had arguable reasonable suspicion to conclude Mr. Castellano drove evasively to avoid law enforcement and to believe that Mr. Castellano was involved in criminal activity. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (recognizing that a defendant's presence in an area of drug-crime activity, combined with his "unprovoked flight" upon seeing law enforcement, and "nervous, evasive behavior" are all "pertinent factor[s] in determining reasonable suspicion"); *Vondrak*, 535 F.3d at 1207.

Viewing the circumstances as a whole, Officer Lewis had arguable reasonable suspicion of drug-related activity sufficient to prolong Mr. Castellano's detention to call for a canine sniff as a matter of law. Further, as Officer Lewis points out, Mr. Castellano did not challenge the fourteen-minute delay in waiting for the canine officer's arrival as unreasonable. (*See* Pl.'s

8

Opp'n, ECF No. 27; Def.'s Reply 5, ECF No. 28.) Because Mr. Castellano failed to put forth evidence in support of his claim that Officer Lewis's conduct during the traffic stop and investigatory detention violated Mr. Castellano's Fourth Amendment rights, the Court need conduct no further inquiry. *Cortez*, 478 F.3d at 1114. Because Officer Lewis had at least arguable reasonable suspicion to conduct the investigative detention, qualified immunity protects Officer Lewis from suit. *Vondrak*, 535 F.3d at 1207.

### C. RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS the District Court grant Officer Lewis' Motion for Summary Judgment on the basis that qualified immunity protects Officer Lewis. The undersigned further RECOMMENDS the District Court dismiss the Complaint against FNU Swartz sua sponte for failure to serve under Federal Rule of Civil Procedure 4(m).

The Court will send copies of this Report and Recommendation to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objection to this Report and Recommendation with the clerk of the court, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of receiving it. Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this _29th__ day of December, 2015.

BY THE COURT:

_Evelyn J. Furse_
EVELYN J. FURSE
United States Magistrate Judge